IN THE MATTER OF REBECCA ANN BADZINSKI

No. 8510DC417

(Filed 4 February 1986)

**Infants § 4— neglected child—order that mother submit to psychological evaluation —no authority under N.C.G.S. 7A-650(b1)**

> The district court did not have authority pursuant to N.C.G.S. 7A-650 to order a mother to submit to a psychological or psychiatric assessment and treatment where her child had previously been adjudicated neglected because N.C.G.S. 7A-650(b1) is ambiguous in that it does not make clear in whose treatment a parent may be ordered to participate. The most reasonable interpretation, given the language of the statute and its context and apparent purpose, is that it authorizes the district court to order the parent of a juvenile ad-

judicated delinquent, undisciplined, abused, neglected, or dependent to participate in medical, psychiatric, psychological or other treatment ordered for the juvenile, but does not authorize the court to order a juvenile's parent to otherwise submit to medical, psychiatric, psychological or other assessment or treatment. N.C.G.S. 7A-647(3).

APPEAL by respondent Mary Spanovich from *Cashwell, Judge.* Judgment entered 21 November 1984 in WAKE County District Court. Heard in the Court of Appeals 29 October 1985.

This juvenile proceeding was instituted in April 1983 when the Wake County Department of Social Services (hereinafter "Department") filed a petition alleging that Rebecca Ann Badzinski was a neglected juvenile as defined in N.C. Gen. Stat. § 7A-517(21) (1981). In the petition, the Department alleged that the care, supervision and living situation provided for the juvenile by her mother, Mary Spanovich, was inadequate. By order dated 17 August 1983, the court adjudged that the juvenile was neglected, placed legal custody of the juvenile with the Department with physical custody remaining with the juvenile's mother and ordered that the matter be reviewed in six months.

When the matter came on for review, evidence was presented which showed that the care and living environment provided for the child by her mother had improved and that the mother had complied with the requirements of the prior court order and the recommendations of the Department regarding the child's care. In accordance with the recommendations of the juvenile's *guardian ad litem* and a social worker with the Department, the court returned legal custody of the juvenile to her mother and ordered the Department to continue protective supervision over the child.

At the review hearing, the social worker informed the court that the Department had requested that the mother submit to evaluation by an agency psychologist but that the mother had refused to do so. The Department believed an evaluation was necessary in order to work effectively with the mother towards a goal of enhancing her abilities in effective parenting and requested that the court order the mother to participate in a psychological evaluation. The *guardian ad litem*, in a report presented to the court, stated that she believed that psychological evaluation and subsequent follow-up would greatly enhance the

mother's ability to deal with the stresses of single parenting and to provide a stable loving environment for her children and recommended that the mother be made to undergo such evaluation. The court concluded that it was in the juvenile's best interests that a special hearing be conducted to determine if the juvenile's mother should be ordered to participate in medical, psychiatric, psychological or other treatment and ordered that a petition be prepared for the court requiring such a hearing.

Subsequently, a juvenile petition was prepared for and signed by the court which, pursuant to N.C. Gen. Stat. § 7A-650 (1981 and Cum. Supp. 1985), called for and gave notice of the special hearing. Based upon the evidence presented at the special hearing, the court made the following pertinent findings of fact in an order entered 21 November 1984:

> 5. That the [juvenile's] mother has failed to comply with the requirement of maintaining a stable, safe home environment in that she was in arrears for two months in the payment of her rent at her present address until said rent was paid by strangers the week before the hearing.
>
> . . . .
>
> 8. That the [juvenile's] mother has failed to budget her income sufficiently to meet her obligations to pay for essentials, although her income coupled with public assistance has been adequate to do so.
>
> 9. That the environment of the [juvenile] continues to be somewhat unsettled as the result of her mother's erratic lifestyle, housing instability, absence of furniture from their home for a period of six months, and financial instability of her mother in the presence of adequate income and public assistance in the form of food stamps.
>
> 10. That the erratic lifestyle, financial instability, housing instability and selling of furniture are symptomatic of a mental illness.
>
> 11. That the assertions by the [juvenile's] mother that several persons were "spying on her," "backstabbers," and "black-mailing," and "framing" her are symptomatic of paranoia.

12. That a failure of the [juvenile's] mother to receive assistance which will eradicate the symptoms depicted in the two preceding paragraphs may result in a situation whereby the [juvenile] must be adjudicated neglected and placed into foster care.

The court concluded:

1. That it is in the best interests of the [juvenile] that her family have stable housing, furniture, consistent child care and realistic expectations which can be met by her mother.

2. That it is in the best interests of the [juvenile] that her mother undergo psychological or psychiatric assessment and follow-up on the recommended treatment, if any, toward the goal of assisting her mother to better function.

Based on these findings and conclusions, the court ordered the juvenile's mother to present herself for psychological or psychiatric assessment at a time and place specified by the Department and to follow through with any treatment recommended by the professional performing the assessment by attending and participating in any counseling or therapeutic sessions scheduled for her benefit and by taking any recommended medications in the proper amounts and frequency. The court directed the Department to pay for the services rendered for the mother's assessment and treatment. From the order entered directing the mother to submit to psychological or psychiatric assessment and treatment, the mother appealed.

While the appeal was pending, the appellant mother failed to appear for the psychological assessment scheduled by the Department. The Department moved for an order requiring the mother to show cause why she should not be held in contempt of the 21 November 1984 order for her failure to appear at the scheduled assessment, which motion was granted. When the mother failed to appear at the show cause hearing on 29 January 1985, the court issued an order for her arrest.

*Assistant Wake County Attorney Corinne G. Russell for petitioner Wake County Department of Social Services.*

*Thomas W. Jordan, Jr. for the juvenile Rebecca Ann Badzinski and for Rebecca Toole, guardian ad litem for the juvenile.*

*A. Larkin Kirkman for respondent Mary Spanovich.*

WELLS, Judge.

The dispositive issue presented by this appeal is whether the court below had authority pursuant to G.S. § 7A-650 to order the appellant mother to submit to psychological or psychiatric assessment and treatment. We conclude the court had no such authority; therefore, the order appealed from must be vacated.

G.S. § 7A-650 provides as follows in relevant part:

AUTHORITY OVER PARENTS OF JUVENILE ADJUDICATED AS DELINQUENT, UNDISCIPLINED, ABUSED, NEGLECTED, OR DEPENDENT.

(a) If the judge orders medical, surgical, psychiatric, psychological, or other treatment pursuant to G.S. 7A-647(3), the judge may order the parent or other responsible parties to pay the cost of the treatment or care ordered.

(b) The judge may order the parent to provide transportation for a juvenile to keep an appointment with a court counselor.

(b1) In any case where a juvenile has been adjudicated as delinquent, undisciplined, abused, neglected or dependent, the judge may conduct a special hearing to determine if the court should order the parents to participate in medical, psychiatric, psychological or other treatment. The notice of this hearing shall be by special petition and summons to be filed by the court and served upon the parents at the conclusion of the adjudication hearing. If, at this hearing, the court finds it in the best interest of the juvenile for the parent to be directly involved in treatment, the judge may order the parent to participate in medical, psychiatric, psychological or other treatment.

(c) Whenever legal custody of a juvenile is vested in someone other than his parent, . . . the judge may order that

> the parent pay a reasonable sum that will cover in whole or in part the support of the juvenile . . . .

It is clear that the district court purported to act pursuant to G.S. § 7A-650(b1) in calling for the special hearing and in ordering the mother to submit to psychiatric or psychological assessment and treatment. This subdivision was added to G.S. § 7A-650 in 1983 and has not previously been interpreted by our appellate courts. The appellant mother argues that G.S. § 7A-650(b1) is ambiguous in that it does not make clear in whose treatment a parent may be ordered to participate. She contends this subdivision should be interpreted as only empowering the court to order a parent to participate in the treatment of a juvenile and not as authorizing the court to order a parent to submit to evaluation or treatment. The appellees, the Department of Social Services and the juvenile's *guardian ad litem*, argue that the subdivision should not be interpreted so narrowly and that the district court clearly had the authority to order the appellant mother to present herself for psychological or psychiatric assessment and treatment.

We agree that G.S. § 7A-650(b1) is ambiguous. Thus, we must refer to accepted principles of statutory construction to determine the interpretation intended by our legislature. *See Young v. Whitehall Co.*, 229 N.C. 360, 49 S.E. 2d 797 (1948). "It is fundamental that legislative intent controls the interpretation of statutes." *In re Brownlee*, 301 N.C. 532, 272 S.E. 2d 861 (1981). In ascertaining and giving effect to the legislative intent, an act must be considered as a whole, *id.*, as must parts of the same statute dealing with the same subject matter. *Fishing Pier v. Town of Carolina Beach*, 274 N.C. 362, 163 S.E. 2d 363 (1968). The language of a statute must be read contextually, with reference to the objects and purposes sought to be accomplished and in a sense which harmonizes with the subject matter. *In re Dillingham*, 257 N.C. 684, 127 S.E. 2d 584 (1962). In interpreting a statute, it will be presumed that the legislature comprehended the import of the words employed by it to express its intent. *Sellers v. Refrigerators, Inc.*, 283 N.C. 79, 194 S.E. 2d 817 (1973). "[W]here the words of a statute have not acquired a technical meaning, they must be construed in accordance with their common and ordinary meaning unless a different meaning is apparent or definitely indicated by the context." *Id.*

Applying these principles here, we find the following: The statute in question, G.S. § 7A-650, is located in Article 52 of our present Juvenile Code, Chapter 7A, Articles 41-58 (1981 and Cum. Supp. 1985). The statutes contained within Article 52, which is entitled "Dispositions," all concern dispositions in juvenile actions. The dispositional alternatives set forth in the Article all directly affect the individual juvenile, either through his or her placement, supervision, examination, treatment or commitment or by the imposition of certain sanctions upon the juvenile. *See, e.g.*, N.C. Gen. Stat. §§ 7A-647, -648 and -649 (1981). G.S. § 7A-647(3), for example, which is cited in G.S. § 7A-650(a), provides as follows in relevant part:

> (3) In any case, the judge may order that the juvenile be examined by a physician, psychiatrist, psychologist or other qualified expert . . . to determine the needs of the juvenile. If the judge finds the juvenile to be in need of medical, surgical, psychiatric, psychological or other treatment, he shall allow the parent or other responsible persons to arrange for care. If the parent declines or is unable to make necessary arrangements, the judge may order the needed treatment, surgery or care, and . . . order the parent to pay the cost of such care pursuant to G.S. 7A-650. . . .

G.S. § 7A-650 sets forth the authority the court has over the parents of the juvenile with respect to the disposition ordered. Its purpose appears to be to enable the court to order the parents to assist with the care, supervision or treatment ordered for the juvenile by either paying or sharing in the cost of the juvenile's support, paying the cost of the treatment or care ordered pursuant to G.S. § 7A-647(3), participating in the treatment ordered or providing the transportation needed to carry out the court's directive. *See* G.S. § 7A-650(a)-(c).

Though G.S. § 7A-650(b1) does not clearly indicate that the treatment referred to therein is treatment ordered for the juvenile pursuant to G.S. § 7A-647(3) rather than treatment of the parent, such interpretation of that subdivision is the more reasonable one given the apparent purpose of G.S. § 7A-650 and the language and context of the subdivision. The remaining relevant subdivisions of G.S. § 7A-650, *i.e.* G.S. § 7A-650(a)(b) and (c), as well as the other statutes in Article 52, all relate to a disposition

ordered by the court which directly affects the individual juvenile, rather than any other person. All other references in G.S. § 7A-650 and in Article 52 to medical, psychiatric, psychological or other treatment are to such treatment ordered for the juvenile pursuant to G.S. § 7A-647(3). *See* G.S. § 7A-647(3) and G.S. § 7A-650(a). Thus, it would be most consistent with the remaining sections of G.S. § 7A-650 and the other statutes in Article 52 to interpret G.S. § 7A-650(b1) as also referring to a disposition directly affecting the juvenile; that is, treatment ordered for the juvenile pursuant to G.S. § 7A-647(3). Significantly, the phrase "medical, psychiatric, psychological or other treatment" used in G.S. § 7A-650(b1) parallels the phrasing "medical, surgical, psychiatric, psychological or other treatment" used in G.S. § 7A-647(3) and G.S. § 7A-650(a) with reference to treatment ordered for the juvenile, except for the omission of the word "surgical." It follows logically that if the legislature were referring in G.S. § 7A-650(b1) to treatment ordered for the juvenile, that the word "surgical" would be omitted since surgery is not generally a treatment in which a parent could participate. In contrast, a parent could participate in psychiatric or psychological treatment of a juvenile by, for example, participating in family therapy and could even participate in a juvenile's medical treatment, particularly if the treatment were in the form of physical therapy. If, in fact, the legislature were referring to treatment of a parent in G.S. § 7A-650(b1), we see no logical reason for the omission of the word "surgical."

That the legislature, by adding G.S. § 7A-650(b1), intended only to grant courts the authority to order a parent to participate in the juvenile's treatment, rather than the authority to order a parent to submit to examination or treatment, is also indicated by its use of the word "participate" in the subdivision. "Participate" commonly means to have a part or share in something with others. *See Black's Law Dictionary* 1007 (5th ed. 1979); *Webster's New Collegiate Dictionary* 835 (1977). There is no indication that the legislature intended for this word as used in G.S. § 7A-650(b1) to have a contrary meaning. This definition of "participate" is clearly consistent with the interpretation of G.S. § 7A-650(b1) urged by the appellant mother. Had the legislature intended to grant courts the authority to order the juvenile's parent to submit to examination or treatment, it could have clearly indicated

such intent by use of a more appropriate verb or language similar to that used in G.S. § 7A-647(3). Its failure to do so persuades us that this was not the intent.

We conclude that the most reasonable interpretation of G.S. § 7A-650(b1), given the language of that subdivision and its context and the apparent purpose of the statute, is that it only authorizes the district court to order the parent of a juvenile adjudicated as delinquent, undisciplined, abused, neglected, or dependent to participate in medical, psychiatric, psychological or other treatment ordered for the juvenile pursuant to G.S. § 7A-647(3). G.S. § 7A-650(b1), as we interpret it, does not authorize the court to order a juvenile's parent to otherwise submit to medical, psychiatric, psychological or other assessment or treatment. Accordingly, we hold that the court below erred in ordering the appellant mother pursuant to G.S. § 7A-650(b1) to submit to psychological or psychiatric assessment and treatment and that such order entered 21 November 1984 must be and is hereby vacated. Since the arrest order entered 29 January 1985 is based on the 21 November 1984 order which the court lacked the authority to enter, it must also be and is hereby vacated. *See Hardee v. Hardee*, 59 N.C. App. 465, 297 S.E. 2d 606 (1982).

Because we so hold, we need not address the remaining arguments presented by the appellant mother.

Vacated.

Judges ARNOLD and PARKER concur.