IN THE MATTER OF: APRIL COGDILL, MARK COGDILL, MINOR CHILDREN

No. COA99-1051

(Filed 18 April 2000)

### 1. Child Abuse and Neglect— adjudication order—authority over parent

The trial court in a juvenile neglect proceeding did not have the authority to order respondent to "secure and maintain safe, stable housing and employment" or to contact the Child Support Enforcement Department. N.C.G.S. § 7A-650 is the trial court's only source of authority over the parent of a juvenile adjudicated abused or neglected and the trial court may not order a parent to undergo any course of conduct not provided for in the statute.

### 2. Child Abuse and Neglect— dispositional order—parent to undergo psychological testing

The trial court properly ordered respondent-mother to undergo psychological evaluation and possible treatment in a child abuse and neglect dispositional order where the father's abuse led to the adjudications, the court found that respondent was aware of the abuse and did not tell the truth in court, and the evaluation and possible treatment were directed toward remediating or remedying behaviors or conditions which led to the adjudications.

### 3. Child Abuse and Neglect— sufficiency of evidence—sufficiency of findings

The trial court's findings of fact in a juvenile abuse adjudication were supported by clear and convincing evidence and the findings supported the conclusion that she was abused in that her father took and attempted to take indecent liberties with her and acted for the purpose of arousing or gratifying sexual desire.

Appeal by respondent mother from adjudication and dispositional order filed 16 December 1998 by Judge Shirley H. Brown in Buncombe County District Court. Heard in the Court of Appeals 4 April 2000.

*John C. Adams for petitioner-appellee Buncombe County Department of Social Services.*

*Hunton & Williams, by Jason S. Thomas, Guardian Ad Litem.*

*Michael E. Casterline for respondent mother-appellant.*

*Joel Trilling for respondent father-appellee.*

GREENE, Judge.

Linda Cogdill (Respondent) appeals an order filed 16 December 1998 adjudicating April Cogdill (April) an abused and neglected child, and adjudicating Mark Cogdill (Mark) a neglected child.

The evidence shows that on 23 February 1998, petitions were filed by Buncombe County Department of Social Services (DSS) alleging April, the twelve-year-old daughter of Respondent, was an abused and neglected juvenile, and Mark, the nine-year-old son of Respondent, was a neglected juvenile.

At a 31 July 1998 hearing on the petitions, Cynthia Brown, M.D. (Dr. Brown) testified she was employed as the medical director of the Child Advocacy Center (the Center), and in January of 1998 she saw April and Mark at the Center for the purpose of conducting child medical examinations on them. Dr. Brown testified a child medical examination includes an interview with the child and the family, and a complete examination of the child. She stated the examinations were initiated because "April had disclosed to [Kay McCauley (McCauley), a social worker with DSS] that her father had . . . asked her to touch his penis." During Dr. Brown's interview of April, April told Dr. Brown her father had " 'said stuff to [her] and [her] cousin, . . . [Ashley],' " and Ashley had told April that April's father had asked Ashley " 'to touch his privates' " and she had told him " ' "no." ' " April also told Dr. Brown that her father had " 'asked [her] to look at a book' " and the book was a "dirty book." When asked by Dr. Brown whether she had ever been asked by her father to touch his "private parts," April responded " 'no.' " Dr. Brown testified that her examination of April revealed "no abnormal findings," and she stated that if a child is sexually abused by being fondled there is often no physical evidence of abuse.

McCauley testified that on 13 September 1997, DSS received a report regarding April and Mark. The report indicated the Asheville Police Department had been contacted and told there were some problems at the children's residence, and when an officer arrived at the residence he found April's father chasing April down the road. April told the officer she would not return home with her father. McCauley was then assigned to investigate the incident, and April

told McCauley she refused to return home with her father because he "was asking her to look at and touch at his thing." April stated her father "would ask her to come into the basement to help him clean the basement, and then he would show her his thing and ask her to touch it." April told McCauley that her cousin, Ashley, was also in the basement when this incident occurred.

McCauley testified that as a result of her investigation, April was taken to Respondent's home, and Respondent told McCauley "that April had told her that her father would come in and put his hand under the blanket when she was asleep on the couch, and up under her crotch." When April told her father " 'no,' " he responded, " 'You must be a lesbian.' " McCauley testified regarding her conversations with Respondent that "[Respondent] initially believed April and stated that April had told her things, and actually that April had told her more than she had told [DSS]. And she was initially very supportive of April and protecting her from her father." Later, however, Respondent told McCauley that April told her she had been lying regarding her father's conduct. Additionally, Mark told McCauley he had seen his father "play with himself."

Respondent testified April had never told her April's father had abused her, and April told the social worker her father had abused her because she was afraid of the social worker. Additionally, April testified her father did not abuse her; however, she stated her father had shown her a picture of a woman who was wearing a "white, see-through dress," and the picture showed a woman's "butt."

Subsequent to the 31 July 1998 hearing, the trial court held another hearing, and Ashley was subpoenaed to testify at the hearing. Although Ashley was unable to verbally communicate the events which took place in the basement with April's father, she did, at the trial court's request, draw a picture of what happened in the basement with April's father. The picture depicted a man exposing his penis.

On 16 December 1998, the trial court entered an order containing findings of fact consistent with the above stated facts, including the following findings of fact:

> 4. . . . April . . . told the social worker that her father . . . asked her to touch his penis, and . . . April also told Dr. Cynthia Brown . . . that April's father asked April to look at magazines with him that had pictures of naked people in them. . . . April was

**IN RE COGDILL**

[137 N.C. App. 504 (2000)]

called as a witness and testified that she was shown a picture of a girl in a white see-through dress by her father.

. . . .

6. . . . [Respondent] stated . . . [to a social worker at DSS] that April had told her that [April's father] would put his hand under the child's bed blankets and then place his hand on her crotch and when she would tell him to stop, he called [her] a lesbian. April's sibling, Mark, stated his father would play with himself.

7. . . . April stated her father approached April and her cousin Ashley in the basement of the home where he lived . . . and that he asked April to look at "his thing", [sic] but that she never touched it.

8. . . . Ashley . . . was present in court on August 25, 1998 and although she was found competent to be a witness, she had difficulty making a verbal testimony. Ashley made a drawing of [April's father] showing his penis exposed and said that this happened in the basement.

9. . . . [Respondent] denied under oath making any statement to [DSS] concerning the sexual abuse of April. . . .

. . . .

13. . . . [Respondent] has failed to provide safe, stable housing for herself and [April and Mark] . . . . [April and Mark] have been unable to maintain attendance in the same school and their academic performance now suffers for it. . . . [DSS] has assisted the family in registering for housing and . . . they have been approved for Section 8 housing, but the family has not been able to locate a house.

14. . . . [Respondent] has failed to maintain stable employment.

The trial court then concluded as a matter of law that April was an abused and neglected child pursuant to N.C. Gen. Stat. § 7A-517(1), (21),[1] and Mark was a neglected child pursuant to N.C. Gen. Stat. § 7A-517(21). The trial court ordered Respondent, as part of its dispositional order, to "obtain a psychological evaluation and . . . follow all recommendations of the assessment"; "secure and maintain safe,

---

1. Repealed by Session Laws 1998-202, s. 5, effective July 1, 1999. See now § 7B-101 (1999).

stable housing and employment"; and "contact the Child Support Enforcement Department and . . . file the necessary paperwork to begin paying child support for the benefit of [April and Mark]." The order stated that, as a prerequisite to reunification, Respondent was required to comply with the order.

The issues are whether: (I) the trial court had the authority, in its dispositional order, to order Respondent to "secure and maintain safe, stable housing and employment"; (II) the trial court's findings of fact support its conclusion of law Respondent should undergo a psychological evaluation; and (III) the trial court's findings of fact regarding whether April was abused are supported by clear and convincing evidence, and whether those findings of fact support a conclusion of law that April was an abused juvenile.

I

[1] Respondent argues the trial court did not have authority, pursuant to N.C. Gen. Stat. § 7A-650,[2] to order Respondent to "secure and maintain safe, stable housing and employment." We agree.

Section 7A-650 provides authority for the trial court to order the parent of a juvenile who has been adjudicated, in pertinent part, as abused or neglected to "undergo psychiatric, psychological, or other treatment or counseling." N.C.G.S. § 7A-650(b2) (repealed 1999). Section 7A-650 is the trial court's only source of authority over the parent of a juvenile adjudicated abused or neglected, and the trial court may not order a parent to undergo any course of conduct not provided for in the statute. *See In re Badzinski,* 79 N.C. App. 250, 256, 339 S.E.2d 80, 83, *disc. review denied,* 317 N.C. 703, 347 S.E.2d 35 (1986).

In this case, the trial court ordered Respondent, in its dispositional order, to "secure and maintain safe, stable housing and employment." Because section 7A-650 does not provide the trial court with authority to order a parent to obtain housing or employment, we modify the trial court's order to exclude this portion of the order.[3]

2. Repealed by Session Laws 1998-202, s. 5, effective July 1, 1999. See now § 7B-904 (1999).

3. The trial court also ordered Respondent to "contact the Child Support Enforcement Department and . . . file the necessary paperwork to begin paying child support." Although section 7A-650 provides that a trial court may order a parent to "pay a reasonable sum that will cover in whole or in part the support of the juvenile," the statute does not provide the trial court with authority to order a parent to contact a child support enforcement department. N.C.G.S. § 7A-650(c). Accordingly, we modify the trial court's order to exclude this portion of the order.

**IN RE COGDILL**

[137 N.C. App. 504 (2000)]

## II

[2] Respondent argues the trial court's findings of fact do not support the conclusion of law that Respondent should undergo a psychological evaluation because the order was not "directed toward remediating or remedying behaviors or conditions" which led to the trial court's adjudications. We disagree.

North Carolina General Statute § 7A-650(b2) provides a trial court may order a parent "to undergo psychiatric, psychological, or other treatment or counseling directed toward remediating or remedying behaviors or conditions" that led to the trial court's adjudication of the juvenile as neglected or abused. N.C.G.S. § 7A-650(b2).

In this case, McCauley testified Respondent had admitted to her that April had told Respondent April's father was abusing her, and Respondent was "initially very supportive of April and protecting her from her father." Respondent, however, testified that she never told McCauley that April had discussed her father's abuse with Respondent. The trial court found McCauley's testimony more credible, and found as fact Respondent had told McCauley that April had discussed her father's abuse with Respondent. This finding of fact shows Respondent was aware April was being abused and Respondent did not tell the truth in court about the abuse. Respondent's knowledge of the abuse raises concerns regarding her reasons for denying the abuse. Moreover, because it was the father's abuse of April which led to the trial court's adjudications, the trial court's order that Respondent undergo a psychological evaluation and possible treatment was "directed toward remediating or remedying behaviors or conditions" which led to the trial court's adjudications. The trial court, therefore, properly ordered Respondent to undergo a psychological evaluation and possible treatment.

## III

[3] Respondent contends the trial court's findings of fact regarding April's status as an abused juvenile are not supported by the evidence, and these findings of fact do not support the trial court's conclusion of law that April is an abused juvenile. We disagree.

The allegations in a petition alleging abuse must be proved by clear and convincing evidence, N.C.G.S. § 7A-635 (repealed 1999),[4] and the trial court's findings of fact, if supported by clear and con-

---

4. Repealed by Session Laws 1998-202, s. 5, effective July 1, 1999. See now § 7B-805 (1999).

vincing evidence, are conclusive on appeal "even where some evidence supports contrary findings," *In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997).

In this case, the trial court found as fact April told McCauley her father had "asked her to touch his penis," April told Dr. Brown her father had asked her to look at magazines containing pictures of naked people, and April testified her father had shown her a picture of a woman wearing a see-through dress. These findings of fact are supported by the testimony of McCauley, Dr. Brown, and April. The trial court also found as fact Respondent told DSS that April "had told [Respondent] that [April's father] would put his hand under [April's] bed blankets and then place his hand on her crotch and when she would tell him to stop, he called [her] a lesbian." Although Respondent testified she did not make these statements to DSS, this finding of fact is supported by McCauley's testimony that these statements were made. The trial court's finding of fact that Mark told McCauley his father "play[ed] with himself" is also supported by McCauley's testimony. Additionally, the trial court found as fact "April stated her father approached April and . . . Ashley in the basement of the home where he lived . . . and that he asked April to look at 'his thing.' " This finding of fact is supported by McCauley's testimony that April made this statement to her. This finding is also supported by Ashley's drawing, made at the trial court's request, of what Ashley saw when she was in the basement with April's father. The drawing depicted a man exposing his penis. Finally, the trial court's finding of fact that Respondent "denied under oath making any statement to [DSS] concerning the sexual abuse of April" is supported by Respondent's testimony. The trial court's findings of fact regarding April's status as an abused juvenile are therefore supported by clear and convincing evidence.

Respondent also contends these findings of fact do not support the trial court's conclusion of law that April is an abused juvenile.

An abused juvenile is defined, in pertinent part, as a juvenile whose parent "[c]ommits, permits, or encourages the commission of a violation of the following laws by, with, or upon the juvenile: . . . taking indecent liberties with the juvenile, as provided in G.S. 14-202.1, regardless of the age of the parties." N.C.G.S. § 7A-517(1)(c). North Carolina General Statute § 14-202.1 provides:

(a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he . . . :

> (1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire[.]

N.C.G.S. § 14-202.1 (1999). Whether a person acts "for the purpose of arousing or gratifying sexual desire[] may be inferred from the evidence of [his] actions." *State v. Rhodes*, 321 N.C. 102, 105, 361 S.E.2d 578, 580 (1987).

In this case, the findings of fact, as stated above, support a conclusion April's father took and attempted to take indecent liberties with April when he exposed his penis to April and when he asked April to touch his penis while they were in the basement, when he "place[d] his hand on [April's] crotch," and when he showed April a picture of a woman wearing a see-through dress. Moreover, that April's father acted "for the purpose of arousing or gratifying sexual desire" can be inferred from these findings. The trial court's findings of fact, therefore, support its conclusion of law that April is an abused juvenile.

Affirmed as modified.

Judges EDMUNDS and SMITH concur.