IN THE MATTER OF: E.H., JR. T.H., T.H., K.H., K.H.
No. COA08-362
Court of Appeals of North Carolina
Filed September 2, 2008
This case not for publication
Assistant County Attorney Cathy L. Moore for petitioner-appellee Durham County Department of Social Services; Christy Hamilton Malott for appellee Guardian ad Litem.
Michael E. Casterline for respondent-appellant.
HUNTER, Judge.
E.H., Sr. ("respondent-father") appeals from an order adjudicating E.H., Jr., T.A.H., T.B.H., K.A.H., and K.B.H. neglected juveniles and T.A.H. an abused juvenile.[1] After careful review, we affirm.
On 8 February 2007, the Durham County Department of Social Services ("DSS") filed petitions alleging that all five children were neglected. Specifically, DSS alleged a pattern of drug use by their mother, J.L. ("the mother"), and domestic violence because of the mother's physical confrontations with her current boyfriend. DSS also alleged that respondent-father was not a suitable placement option because of a prior substantiated charge that he sexually abused one of the children. As a result, the children were placed in non-secure custody.
On 19 February 2007, DSS filed a supplemental petition alleging that one of the children was abused based on the substantiated charge of sexual abuse. DSS also alleged that all of the children were neglected because they did not receive proper discipline from respondent-father or lived in an injurious environment in respondent-father's home. More specifically, DSS alleged that the mother had previously obtained a domestic violence protection order against respondent-father, that respondent-father had punched E.H., Jr. and left a bruise under his left eye, and that the family had a protective services history with DSS dating back to 1996. After hearings on 26 February and 19 March 2007, respondent-father consented to continued non-secure custody.
An adjudicatory hearing was held on 26, 27, and 28 September 2007. The evidence at the hearing showed that respondent-father and the mother were unmarried but lived together for about six years, until respondent-father left the home in 1999. There were several documented incidents of domestic violence between respondent-father and the mother, including 29 September 1998, when a domestic violence order was entered in favor of the mother against respondent-father. In May of 1999, the mother gained custody of the children because respondent-father allegedly threatened her. Then, in September of 2003, the mother stopped respondent-father's visitation after respondent-father allegedly hit her with a car.
On 15 January 2007, one of the children called respondent-father because of another physical confrontation between the mother and her current boyfriend. Respondent-father picked up the children at their grandmother's house and called 911 to report the incident. The children stayed with respondent-father until 29 January 2007, when a social worker discovered respondent-father's history of sexual abuse. The children then returned to the mother until another incident of domestic violence in her home prompted police to call respondent-father to pick up the children on 2 or 3 February 2007. Respondent-father kept the children until 7 February 2007, when they were placed with their maternal grandmother. However, because the children continued to stay with their parents in spite of the placement, they were placed in foster care on 13 February 2007. At the close of DSS's evidence, the court permitted DSS to amend the petitions to conform to the evidence at the hearing by including the history of domestic violence between the parents.
On 25 October 2007, the court filed its adjudication order. The court concluded as a matter of law that the children were neglected because they did not receive proper care, supervision, or discipline from their parents and that they lived in an environment injurious to their welfare, and placed them in the legal custody of DSS.
In the disposition order, filed on 30 October 2007, the court ordered respondent-father to complete sex offender training, a parenting program, and domestic violence or anger management training. The court also ordered respondent-father to participate in the children's mental health treatment as recommended by their therapists. The court further ordered respondent-father to "comply with the existing child support order." That order, originally signed by respondent-father in 1999, set monthly child support at $795.00 and was amended on 25 July 2007 to direct child support payments to DSS rather than the mother. Respondent-father appeals.
We first consider respondent-father's argument that the court did not have the authority under N.C. Gen. Stat. § 7B-904(d) to order him to comply with the existing child support order. We disagree.
Section 7B-904(d) provides:
At the dispositional hearing or a subsequent hearing, when legal custody of a juvenile is vested in someone other than the juvenile's parent, if the court finds that the parent is able to do so, the court may order that the parent pay a reasonable sum that will cover, in whole or in part, the support of the juvenile after the order is entered. If the court requires the payment of child support, the amount of the payments shall be determined as provided in G.S. 50-13.4(c). If the court places a juvenile in the custody of a county department of social services and if the court finds that the parent is unable to pay the cost of the support required by the juvenile, the cost shall be paid by the county department of social services in whose custody the juvenile is placed, provided the juvenileis not receiving care in an institution owned or operated by the State or federal government or any subdivision thereof.
N.C. Gen. Stat. § 7B-904(d) (2007).
Respondent-father's argument relies heavily on his interpretation of In re Cogdill, 137 N.C. App. 504, 508, 528 S.E.2d 600, 603 (2000), which was decided under the previous statute, N.C. Gen. Stat. § 7A-650 (repealed 1999). In a footnote to the Cogdill opinion, this Court determined that the statute did not provide the court with authority to order a parent to contact a child support enforcement department. Id. fn 3.
In contrast with Cogdill, the court in this case did not exceed the scope of the current statute. The court did not impose a new child support obligation or order respondent-father to contact child support enforcement to make arrangements to begin child support payments. Cf. In re A.S. & M.J.W., 181 N.C. App. 706, 711, 640 S.E.2d 817, 820, affirmed per curiam, 361 N.C. 686, 651 S.E.2d 883 (2007) (no statutory authority to order respondent-father to report to child support enforcement without first establishing an appropriate amount of child support). Instead, the court ordered respondent-father to continue to comply with a support order, most recently amended in July of 2007, that he was already required to obey. Respondent-father has not challenged the existing child support determination and contrary to respondent-father's argument, nothing in section 7B-904(d) required the court to modify the existing order. Accordingly, the assignment of error is overruled. We next consider respondent-father's argument that the court erred when it allowed DSS to amend the petition to conform to the evidence of respondent-father's history of domestic violence introduced at the hearing. We disagree.
"The pleading in an abuse, neglect, or dependency action is the petition." N.C. Gen. Stat. § 7B-401 (2007). "[I]f the specific factual allegations of the petition are sufficient to put the respondent on notice as to each alleged ground for adjudication, the petition will be adequate." In re D.C., C.C., 183 N.C. App. 344, 350, 644 S.E.2d 640, 643 (2007).
Although DSS initially alleged neglect based on domestic violence between the mother and her current boyfriend, DSS alleged neglect in the supplemental petition based on respondent-father's history of domestic violence as to all five children. Specifically, DSS alleged that, "[t]he children are neglected in that they are not receiving proper discipline from their father or live in an environment injurious to their welfare in [respondent-father's] home"; that there "was a domestic violence protection order taken out by the mother against [respondent-father]"; that "the child, E., and [respondent-father] had an altercation and [respondent-father] punched E. in the face causing a bruise under his left eye"; and finally, that "[t]he family has a protective services history with Durham DSS dating back to 1996, and received case management services in 2004-2005."
Because DSS had already alleged neglect of all five children based on respondent-father's history of domestic violence in the supplemental petition, N.C. Gen. Stat. § 7B-800 (2007) permitted the amendment because "the amendment d[id] not change the nature of the conditions upon which the petition [was] based." Cf. In re M.G., M.B., K.R., J.R., ___ N.C. App. ___, ___, 653 S.E.2d 581, 587 (2007) (error to allow amendment that added another victim of sexual abuse). Further, respondent-father cannot show that amending the petitions caused him to be unprepared to defend himself against the allegations of neglect based on domestic violence. In the course of objecting to questions about respondent-father's history of domestic violence, counsel noted, "I have all those files here, and I would ask that the orders stand for themselves about that." Thus, counsel was aware of, and prepared to answer, DSS's allegations of domestic violence based on the notice provided by the petitions. Counsel, in fact, later elicited testimony from respondent-father that respondent-father had been acquitted of criminal charges stemming from one of the alleged incidents of domestic violence. Thus, respondent-father demonstrated at the hearing that he was aware of the allegations of domestic violence and prepared to answer them. Accordingly, we affirm.
Affirmed.
Judges McGEE and STROUD concur.
Report per Rule 30(e).
NOTES
[1] Because there are two children with the initials "T.H." and two children with the initials "K.H." we provided a third initial in order to distinguish them from each other. To our knowledge, the middle initials provided are not representative of their actual middle names.