693 S.E.2d 383 (2010)
In the Matter of W.V.
No. COA09-1568.
Court of Appeals of North Carolina.
June 1, 2010.
*385 J. Suzanne Smith, Asheville, for petitioner-appellee.
M. Carridy Bender, Asheville, for guardian ad litem.
Robert W. Ewing, Clemmons, for respondent-appellant.
BRYANT, Judge.
Petitioner Buncombe County Department of Social Services filed a juvenile petition on 6 April 2009 alleging that W.V.[1] (hereinafter referred to as "child") is neglected in that he does not receive proper care, supervision, or discipline from his parents and lives in an environment injurious to his welfare. The child's mother stipulated to the petition's allegations and to adjudication of the child as neglected. Respondent refused to stipulate to the allegations and requested a trial. By order filed 15 September 2009, the Buncombe County Superior Court adjudicated the child neglected and placed him in the home of his mother. Respondent appeals. As discussed below, we affirm in part, vacate in part, and remand.

Facts
Respondent has not contested the court's findings of fact which are therefore deemed binding. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). These findings show the following: The child's mother and respondent are not married. On 12 September 2008, petitioner received a report that the Buncombe County Sheriff's Department found a marijuana plant and drug paraphernalia in the residence shared by respondent, the child, and the child's mother. In response to the report, a social worker visited the family at home. Respondent reported that he smokes marijuana regularly but outside of the house. He also acknowledged that he has a marijuana plant growing in the living room window but felt it was safe from the child's access because it was protected by a baby gate. The social worker noted that respondent did most of the talking and prevented the mother from responding to questions. When the social worker asked to speak to the mother alone, the maternal great-grandmother positioned herself out of respondent's line of sight and made a choking gesture. The social worker waited for respondent to return to work and spoke privately with the mother, who told her that she did not agree with having the marijuana plant in the home. The social worker also subsequently spoke to respondent's ex-wife, who reported a long history of domestic violence with respondent and that she had ended the marriage because of it.
On 13 October 2008, the mother reported to the social worker that approximately two weeks earlier she told respondent that she wanted to end their relationship and respondent ripped off her clothes and ripped the telephone off the wall. The mother also related that respondent had used the child as a shield as he pushed her repeatedly. She described another incident in which respondent choked her to unconsciousness while she was pregnant with the child. After meeting with the social worker, the mother obtained a domestic violence protective order and moved with the child to a new residence separate from respondent.
On 16 December 2008, a program manager for petitioner spoke to respondent by telephone. During this conversation respondent became verbally abusive, calling the program manager a "bitch," and telling the program manager that she and all of the women at the department were stupid. On 29 December 2008, a social worker spoke to respondent after a supervised visit with the child about completing a case plan and attending domestic violence classes. Respondent refused to sign a case plan or attend any classes and accused DSS of being full of man-haters biased against him because of the prior domestic abuse involving his ex-wife.
Based upon these findings, the court adjudicated the child neglected and directed the child be placed with his mother. The court also ordered respondent to obtain stable employment, to complete a domestic violence education program, to complete a substance abuse assessment and follow all recommendations, to keep two appointments per month with the social worker, to have supervised visitation with the child, to submit to DNA *386 testing to verify paternity of the child, to attend all child and family team meetings, and to pay child support to the mother in the amount of $100 per month.
Respondent makes six arguments on appeal: (I) the findings of fact did not support the conclusion that the child was neglected under N.C. Gen.Stat. § 7B-101(15); (II) the findings were insufficient to support the visitation order; (III) the visitation order violates the requirements of N.C. Gen.Stat. § 7B-905(c); (IV) the trial court lacked subject matter jurisdiction to order respondent to pay child support; (V) the findings of fact were insufficient to support the conclusion that respondent pay child support; and (VI) the trial court lacked statutory authority to order respondent to obtain and maintain stable employment. As discussed herein, we affirm in part, vacate in part, and remand.

Standard of Review
When this Court reviews an order in a juvenile abuse, neglect or dependency proceeding, we determine whether the trial court made proper findings of fact and conclusions of law in its adjudication and disposition orders. In re J.S., 182 N.C.App. 79, 86, 641 S.E.2d 395, 399 (2007). In so doing, we consider whether clear and convincing evidence in the record supports the findings and whether the findings support the trial court's conclusions. In re Gleisner, 141 N.C.App. 475, 480, 539 S.E.2d 362, 365 (2000) (citations omitted). If there is evidence to support the trial court's findings of fact, they are deemed conclusive even though there may be evidence to support contrary findings. In re Montgomery, 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984). We consider matters of statutory interpretation de novo. Piedmont Triad Airport Auth. v. Urbine, 354 N.C. 336, 338, 554 S.E.2d 331, 332 (2001), cert. denied, 535 U.S. 971, 122 S.Ct. 1438, 152 L.Ed.2d 381 (2002).

I
Respondent first argues the trial court's findings of fact do not support its conclusion of law that the child was neglected. We disagree.
By statutory definition, a neglected juvenile is one "who does not receive proper care, supervision, or discipline from the juvenile's parent" or "who lives in an environment injurious to the juvenile's welfare...." N.C.G.S. § 7B-101(15) (2009). "[T]his Court has consistently required that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide `proper care, supervision, or discipline.'" In re Safriet, 112 N.C.App. 747, 752, 436 S.E.2d 898, 901-02 (1993). "It is well-established that the trial court need not wait for actual harm to occur to the child if there is a substantial risk of harm to the child in the home." In re T.S., III & S.M., 178 N.C.App. 110, 113, 631 S.E.2d 19, 22, disc. review denied, 360 N.C. 647, 637 S.E.2d 218 (2006), aff'd per curiam on other grounds, 361 N.C. 231, 641 S.E.2d 302 (2007). Our Supreme Court has stated that "severe or dangerous conduct or a pattern of conduct either causing injury or potentially causing injury to the juvenile" may include alcohol or substance abuse by the parent and driving while impaired with a child as a passenger. In re Stumbo, 357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003). This Court has held that exposure of the child to drug use, acts of domestic violence, threatening or abusive behavior toward social workers and police officers, and infliction of injury by a parent to another child or parent, can be conduct causing or potentially causing injury to minors. See In re D.B.J., ___ N.C.App. ___, ___, 678 S.E.2d 778, 781 (2009); In re Helms, 127 N.C.App. 505, 511, 491 S.E.2d 672, 676 (1997).
Here, unchallenged findings of fact show that respondent grew and consumed an illegal controlled substance in the child's home, engaged in domestic violence in the child's presence, choked the child's mother to unconsciousness while the child was in vitro, called a social worker by a derogatory word, insulted the intelligence of social workers, raised his voice to social workers, and engaged in domestic violence with a prior spouse. We hold these findings support the conclusion of law that the child lives in an *387 environment injurious to his welfare and is therefore a neglected juvenile.

II, III
Respondent next argues the findings were insufficient to support the visitation order and the visitation order did not adopt an appropriate visitation plan. We hold that the findings support the visitation plan; however, the trial court erred in failing to provide a minimum outline for respondent's visitation.
"Any dispositional order under which a juvenile is removed from the custody of a parent, guardian, custodian, or caretaker... shall provide for appropriate visitation as may be in the best interests of the juvenile and consistent with the juvenile's health and safety." N.C. Gen.Stat. § 7B-905(c) (2009). This Court reviews the trial court's decision whether it is in the best interests of the juvenile to award visitation to a parent for an abuse of discretion. In re C.M., 183 N.C.App. 207, 215, 644 S.E.2d 588, 595 (2007). If the court does award visitation to a parent, the order must include an appropriate visitation plan that sets out at least a minimum outline, such as the time, place, and conditions under which visitation may be exercised. In re E.C., 174 N.C.App. 517, 521-23, 621 S.E.2d 647, 651-52 (2005).
Respondent contends the trial court failed to make sufficient findings of fact about both the appropriateness of supervised visitation and a minimum outline of visitation. As to the former, the trial court found that respondent "demonstrated a complete lack of understanding that his negative attitudes and violent behaviors are unacceptable and have negatively impact [sic] all of his children." The trial court further found that: respondent has not been consistent with his contact with the child; he has refused to enroll in classes offering assistance and education for the well-being of the child; although respondent states he loves the child, the guardian ad litem ("GAL") "sees enough instability in the respondent father's emotional state to give the GAL alarm;" petitioner recommended that it is in the best interest of the child that respondent have weekly visits supervised by petitioner; and the GAL recommended that it is in the best interest of the child that respondent "have supervised, short visits only" with the child. The court adopted petitioner's recommendation and found that it is in the child's best interest that respondent have weekly supervised visitation.
We hold these findings support the court's decision to award weekly visitation under petitioner's supervision. We find no abuse of discretion. However, nothing in the order establishes a minimum outline of visitation. The order only states that respondent shall have weekly visitations supervised by petitioner. We thus remand for proceedings to clarify respondent's visitation rights, including the establishment of a minimum outline of visitation. See In re E.C., 174 N.C.App. at 523, 621 S.E.2d at 652.

IV, V
Respondent also argues the trial court lacked subject matter jurisdiction and statutory authority to order respondent to pay child support. We disagree. However, since the trial court failed to make sufficient findings of fact to support the amount ordered, we remand for further findings of fact and an appropriate child support order based thereupon.
Subject matter jurisdiction "refers to the power of the court to deal with the kind of action in question" and "is conferred upon the courts by either the North Carolina Constitution or by statute." Harris v. Pembaur, 84 N.C.App. 666, 667, 353 S.E.2d 673, 675 (1987). The district court "has exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent." N.C. Gen.Stat. § 7B-200(a) (2009). In this case, DSS filed a juvenile petition with the district court alleging that the child was neglected and dependent. Accordingly, the district court had subject matter jurisdiction over the proceedings and orders at issue.
Pursuant to N.C. Gen.Stat. § 7B-903, dispositional alternatives for an abused, neglected, or dependent juvenile include "placement in the custody of a parent, *388 relative, private agency offering placement services, [] some other suitable person[, or] the department of social services in the county of the juvenile's residence[.]" N.C.G.S. § 7B-903(2)(b) and (c). A court's authority to order a parent to pay child support in a dispositional order is derived from N.C. Gen. Stat. § 7B-904(d), which provides that
when legal custody of a juvenile is vested in someone other than the juvenile's parent, if the court finds that the parent is able to do so, the court may order that the parent pay a reasonable sum that will cover, in whole or in part, the support of the juvenile after the order is entered.
N.C.G.S. § 7B-904(d) (2009) (emphasis added). We interpret the language of § 7B-904(d) as authorizing the trial court to order the parent with whom custody is not vested to pay child support to the party granted custody. Thus, where one parent is granted custody of the juvenile, the trial court may order the non-custodial parent to pay child support to the custodial parent. We find support for this reading in the subsection's use of the phrase "the parent" rather than "a parent" or "parents." Thus, we conclude that the trial court had the statutory authority to order respondent to pay the juvenile's mother child support.
However, we further conclude the trial court failed to make sufficient findings of fact as required by N.C. Gen.Stat. §§ 7B-904(d) and 50-13.4(c) to support the amount ordered. Pursuant to N.C. Gen.Stat. § 50-13.4(c),
[p]ayments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case.
N.C.G.S. § 50-13.4(c).
Thus, under N.C.G.S. § 50-13.4(c), "an order for child support must be based upon the interplay of the trial court's conclusions of law as to (1) the amount of support necessary to `meet the reasonable needs of the child' and (2) the relative ability of the parties to provide that amount." Coble v. Coble, 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980). These conclusions must be based upon specific factual findings which indicate to the appellate court that the trial court took "due regard" of the particular "estates, earnings, conditions, [and] accustomed standard of living" of both the child and the parents. Id. (quoting N.C.G.S. § 50-13.4(c)). In the absence of such findings, an appellate court has no means of determining whether the order is adequately supported by competent evidence. Id.
In this case, finding of fact 14 states that "[i]t is in the best interest of the minor child that ... respondent father pay child support to the respondent mother in the amount of $100.00 per month...." However, the trial court failed to make any findings concerning the reasonable needs of the child and the relative ability of the father to provide that amount. Id. Accordingly, we remand this matter to the district court for further findings of fact and an appropriate child support order based on those findings.

VI
Respondent also argues the court lacked statutory authority to order him to obtain and maintain stable employment. We agree.
A "trial court may not order a parent to undergo any course of conduct not provided for in [N.C. Gen Stat. § 7B-904]." In re Cogdill, 137 N.C.App. 504, 508, 528 S.E.2d 600, 603 (2000). Section 7B-904 provides that a court may order a parent to pay for certain specific treatments, counseling and classes for the child and/or parent, none of which are relevant here. The trial court may also order a parent to "[t]ake appropriate steps to remedy conditions in the home that led to or contributed to the juvenile's adjudication or to the court's decision to remove custody of the juvenile from the parent." N.C.G.S. § 7B-904(d1)(3). Nothing in the record suggests that respondent's employment situation, or lack thereof, led to or contributed to the juvenile's adjudication. Section 7B-904 does not grant juvenile courts the authority to order a parent to *389 obtain and maintain employment. N.C.G.S. § 7B-904; see also In re Cogdill, 137 N.C.App. at 508, 528 S.E.2d at 603 ("Because section 7A-650[2] does not provide the trial court with authority to order a parent to obtain housing or employment, we modify the trial court's order to exclude this portion of the order."). Accordingly, this portion of the order must also be vacated.

Conclusion
In summary, the trial court's adjudication is affirmed; the portion of the order permitting supervised visitation is remanded for clarification of the visitation plan; the portion of the order requiring respondent to pay child support is remanded for additional findings and entry of an appropriate support order based thereupon; and the portion of the order requiring defendant to obtain and maintain employment is vacated.
Affirmed in part, vacated in part, and remanded.
Judge STEPHENS concurs.
Judge CALABRIA concurs in part and dissents in part in a separate opinion.
CALABRIA, Judge, concurring in part and dissenting in part.
I concur with the portions of the majority's opinion that affirm the trial court's adjudication. I also concur with remanding that portion of the trial court's order permitting supervised visitation for clarification of the visitation plan. However, I respectfully dissent from the portion of the majority's opinion remanding the instant case for additional findings of fact regarding child support. Rather than remand for findings of fact, I would simply vacate the portion of the trial court's order dealing with child support as well as the portion of the trial court's order requiring respondent father to obtain employment. The issues of the appropriate amount of child support and respondent father's employment can ultimately be determined in IV-D Court.
In the instant case, the trial court had the following exchange with respondent mother's counsel:
THE COURT: I would order the father to pay child support for the child. Has that? That's been set up before, has it not, in IV-D?
[RESPONDENT MOTHER'S COUNSEL]: I don't believe so, Your Honor. I believe that was [inaudible].
THE COURT: Oh, that was different children. Okay. I would ask the mother to go to IV-D and make arrangements for child, child support enforcement. I would order the father to cooperate with the IV-D child support enforcement agency in making financial contribution to the child. Pending the determination of an appropriate amount I would set a minimum of $100 per month for child support to be payable by the father to the child.
In its written order, the trial court ordered "[t]hat the respondent father shall pay to the respondent mother for support of the minor child the sum of $100.00 a month beginning August 1, 2009 and payable on the first of each month thereafter until the respondent mother is able to have this case heard in IV-D court."
Chapter 110 of our statutes defines a IV-D case as "a case in which services have been applied for or are being provided by a child support enforcement agency established pursuant to Title IV-D of the Social Security Act as amended and this Article." N.C. Gen. Stat. § 110-129(7) (2009). The trial court in a IV-D case is empowered to
enter an order for the support of the child by periodic payments, which order may include provision for reimbursement for medical expenses incident to the pregnancy and the birth of the child, accrued maintenance and reasonable expense of the action under this subsection on the affidavit of parentage previously filed with said court.
N.C. Gen.Stat. § 110-132(b) (2009). In addition, "[t]he court may order the responsible *390 parents in a IV-D establishment case to perform a job search, if the responsible parent is not incapacitated." Id.; see also N.C. Gen.Stat. § 50-13.4(b) (2009).
"When determining a child support award, a trial judge has a high level of discretion, not only in setting the amount of the award, but also in establishing an appropriate remedy. However, the court's discretion is curtailed in IV-D cases in which services involve a child support enforcement agency." Guilford Cty. v. Davis, 177 N.C.App. 459, 460, 629 S.E.2d 178, 179 (2006) (internal quotations and citations omitted).
The trial court in the instant case was ultimately attempting to have the issue of child support resolved by the IV-D court. While I agree with the majority that the trial court erred by attempting to order child support without proper findings pending respondent mother's institution of a case in IV-D court, I do not believe that it would be appropriate to return this case to the trial court merely for findings. The IV-D court is much better equipped to determine the appropriate amount of child support and is statutorily authorized to assist respondent father in obtaining employment. All further action regarding child support needs to occur in IV-D court.
NOTES
[1] Initials have been used throughout to protect the identity of the juvenile.
[2] Repealed by Session Laws 1998-202, s.5, effective July 1, 1999. See now N.C.G.S. § 7B-904 (2009).