TYSON, Judge.
*33 Marisha Nicole Wade ("respondent-mother") and Dammien Lamar Worth ("respondent-father") (collectively "respondents") appeal from an order terminating their parental rights as to their minor children D.L.W., D.L.N.W., and V.A.W. (collectively "the juveniles"). We reverse those portions of the order concerning respondent-mother and affirm those portions of the order concerning respondent-father.
I. Background
On 1 March 2013, the Alamance County Department of Social Services ("DSS") filed juvenile petitions seeking an adjudication of neglect and dependency concerning two-year-old D.L.W., three-year-old *34 D.L.N.W., and five-year-old V.A.W. The petitions alleged DSS had received reports respondents were "residing with their three children in a van located in the woods that is heated by a kerosene heater," and respondents refused to disclose their location to DSS or otherwise cooperate with an investigation. The petitions also alleged "significant domestic violence between the parents that places the juveniles at risk" and that the juveniles were denied adequate nutrition and hygiene and subjected to inappropriate physical discipline by respondent-father.
DSS obtained nonsecure custody of the juveniles on 28 February 2013 and placed them in foster care. On 27 March 2013, V.A.W. was placed with her maternal grandmother ("Ms. W."), who already had custody of one of respondent-mother's two older daughters. The other older daughter, A.I.C., was in the custody of her great-grandmother (respondent-mother's grandmother). Once Ms. W. obtained housing sufficient to accommodate D.L.W. and D.L.N.W., the two boys joined V.A.W. and the older sibling in Ms. W.'s home on 23 May 2013.
At the adjudication hearing on 1 May 2013, based on stipulations entered into by the parties, the court made the following findings relevant to the court's determination that the juveniles were neglected:
e. At the time of the filing of the petition the Respondent Mother and Father were *506 residing at times with their three children in a van located in the woods.
f. The Respondent Mother denies the van is heated with a kerosene heater but states the van is run during the night to keep warm, but also states the van is cool enough to store milk.
g. The Respondent Parents refused to disclose the location of the van so that the Alamance County Department of Social Services can assess safety and risk issues.
h. It is reported there was domestic violence between the parents that places the juveniles at risk. For example, [V.A.W.] has intervened when the parents are arguing.
....
j. At times, the family has difficulty providing for basic necessities such as housing, baths and so forth. Their skin is very pale and dry, needing lotion.
....
*35 l. The Respondent Father is not employed.
m. The Respondent Mother is employed at AW-NC as a factory worker. She works from 6:00 a.m. until 2:30 p.m.-6:00 p.m. She has been employed for approximately ten months.
n. The Respondent Mother reports she made the van payment for the first time in several months a few weeks ago. She reports the van is not drivable because the finance company turned the car off [sic].
o. The Respondent Mother reports she did not have enough money to maintain a household since becoming a permanent employee on February 18, 2013.
Based on its findings of fact, the court adjudicated the juveniles as "neglected" as defined by N.C. Gen. § 7B-101(15) (2013).
The district court held a permanency planning hearing on 23 October 2013 and established a primary permanent plan of reunification with a secondary plan of custody with a court-approved caretaker by order entered 18 November 2013. The court found that respondents made no progress on their "Out of Home Services" case plans and were homeless, "living in motels." The court also found respondent-mother inconsistently contacted and called her social worker outside of business hours, maintained her full-time job, and completed her mental health assessment.
The court found neither parent had signed a voluntary support agreement with the Child Support Agency, but found respondent-mother was paying child support through income withholding. Although respondent-mother had full-time employment, she had not provided DSS with a "budgeting plan that can account for where the funds coming into the household go," as was ordered by the court.
Respondent-father remained unemployed, provided no child support for his children, and had not attended any visitation or participated in a domestic violence course. He had arranged "access to reliable transportation" but respondents had not negotiated a plan for shared use of the transportation with respondent-mother.
Following a review hearing on 18 December 2013, the district court found respondent-mother had not completed all of the objectives presented in her case plan. She failed to follow the recommendation of treatment for her "social phobia," as diagnosed in the mental health *36 assessment, to obtain appropriate housing, and to provide a plan for shared transportation with respondent-father.
Respondent-father likewise was found to have failed to find appropriate housing, and verifiable employment. He had not participated in domestic violence courses and had attended only a few visits with the children. The court found the parents had made "no progress on any aspect of the case plan has been completed [sic]." The court changed the permanent plan for the juveniles from a primary plan of reunification and secondary plan of custody to a court-approved caretaker to a primary plan of adoption with a secondary plan of guardianship. DSS filed a motion to terminate respondents' parental rights on 11 March 2014.
After hearing evidence on 6-8 August 2014 and 3 September 2014, the district court found grounds to terminate respondents' parental rights for neglect and for failure to make reasonable progress since 28 February *507 2013 in correcting the conditions that led to the juveniles' placement outside the home. N.C. Gen.Stat. § 7B-1111(a)(1)-(2) (2013).
The court found a third ground for termination of respondent-father's parental rights due to his failure to pay a reasonable portion of the juveniles' cost of care. N.C. Gen.Stat. § 7B-1111(a)(3) (2013). The court determined that terminating respondents' parental rights was in the best interests of the juveniles. Respondents gave timely notice of appeal from the termination order. We address each party's arguments in turn.
II. Respondent-Mother's Appeal
Respondent-mother challenges the district court's determination that grounds exist to terminate her parental rights pursuant to N.C. Gen.Stat. § 7B-1111(a)(1) and (2). She claims she had resolved, made progress toward, and intended to resolve the issues which led to the juveniles' removal from her home and their adjudication as neglected in 2013. To the extent she failed to satisfy elements of her DSS case plan or requirements imposed by the court, respondent-mother argues "this was the result of [her] poverty and was not willful." She further contends that the court exceeded its statutory authority in imposing certain requirements for reunification, and finding lack of progress to terminate her parental rights because they were "unrelated to the conditions that led to the children's removal or adjudication" as neglected. See N.C. Gen.Stat. § 7B-904 (2013).
A. Standard of Review
On appeal, our standard of review for the termination of parental rights is whether the trial court's findings of fact *37 are based on clear, cogent and convincing evidence and whether the findings support the conclusions of law
The trial court's 'conclusions of law are reviewable de novo on appeal.'
In re J.S.L., 177 N.C.App. 151, 154, 628 S.E.2d 387, 389 (2006) (citations and internal quotation marks omitted).
B. Analysis
The district court determined respondent-mother had neglected the juveniles under N.C. Gen.Stat. § 7B-1111(a)(1). A neglected juvenile is one who "does not receive proper care [or] supervision" from the juvenile's parent or who "lives in an environment injurious to the juvenile's welfare." N.C. Gen.Stat. § 7B-101(15) (2013). To support an adjudication under N.C. Gen.Stat. § 7B-1111(a)(1), "[n]eglect must exist at the time of the termination hearing." In re C.W., 182 N.C.App. 214, 220, 641 S.E.2d 725, 729 (2007). Where "the parent has been separated from the child for an extended period of time, the petitioner must show that the parent has neglected the child in the past and that the parent is likely to neglect the child in the future." Id. (citation omitted). The determination of whether a child is neglected is a conclusion of law and is reviewed de novo on appeal. In re J.N.S., 180 N.C.App. 573, 575, 637 S.E.2d 914, 915 (2006).
The district court made the following findings of fact in support of its determination that respondent-mother had neglected the juveniles under N.C. Gen.Stat. § 7B-1111(a)(1) :
26[-27].... At the time of the filing of the motion to terminate parental rights, [both parents were] residing at 740 Ivey Road Graham, NC 27253. [They are] currently residing at the Allied Homeless Shelter in Burlington, North Carolina.
....
30. The juveniles have consistently been in out-of-home placement since being removed from the care of the parents.
....
45. The Respondent Mother entered into and was court ordered to comply with [an] out-of-home family services agreement. She was to obtain a mental health assessment. She did an initial assessment which indicated diagnoses *38 of social phobia and cannabis dependency full remission. She did not seek out services to address social phobia.
....
48. The Respondent Mother was to obtain and maintain appropriate housing. She did obtain three different homes and, at times, resided with friends in Durham. She was not stable, would pay rent for one *508 month but not subsequently without good reason and she does not currently have appropriate housing....
49. The Respondent Mother was to obtain and maintain employment. She was employed at AW working 65 hours a week earning between $11.00 and $13.00 per hour. The money was direct deposited in[to her] account. She could not figure out why she could not pay bills or where the money went. In March of 2014, she lost her employment due to incarceration. Initially she lied about the loss of employment, saying she resigned, then that she lost employment due to snow days and then due to incarceration.
50. The Respondent Mother was to develop a reliable means of transportation. She does not have a valid North Carolina driver's license. She continued to drive without a valid driver's license. In December of 2013, she was charged with careless and reckless and fleeing to elude still [sic]. She drove a vehicle registered in the Respondent Father's name with his knowledge that she did not have a license.
....
52. The Respondent Mother was to attend counseling for victims of domestic violence and be able to articulate what she has learned. She attended seven sessions of the support group at Family Abuse Services in 2013. She attended several meetings since losing her job in March of 2014 but has not consistently attended and has not articulated an[ ] understanding of what she has learned. She continued in a relationship with the Respondent Father and there were significant issues regarding ongoing domestic violence.
....
*39 62. The Respondent Parents were required to do a budgeting plan but failed to do so despite being employed for periods of more than one month. Their failure to appropriately budget their funds has continued to result in instability.
....
65. On two differen[t] occasions in 2014, law enforcement has been called to the home of the parents due to domestic violence between the parents.
Based on these findings, the court concluded that "[t]here is a likelihood of repetition of neglect of the minor child[ren] in that neither the mother nor the father ha[s] made reasonable progress given their individual circumstance[s] in the twelve months preceding the filing of the motion for the termination of parental rights."
In her challenge to the evidence supporting the enumerated findings, respondent-mother excepts to the district court's statement in finding 52 that she "has not articulated and [sic] understanding of what she has learned" from domestic violence counseling. While noting she was never ordered to "articulate" anything related to her domestic violence counseling, respondent-mother argues that the court's finding "fails to take into account [her] testimony" at the termination hearing, in which she acknowledged domestic violence and other controlling behaviors by respondent-father and declared her intention to end the relationship.
She submitted and the court found she had attended seven domestic violence group sessions in 2013. She testified she had attended two sessions since losing her employment in March 2014, and failed to attend others because she lacked transportation.
Respondent-mother denied engaging in domestic violence with respondent-father on 16 and 19 March 2014. She attributed difficulties in her relationship with respondent-father to "the loss of our kids and ... us discussing this case plan." She acknowledged having told police on 16 March 2014 that respondent-father "beat [her] up all the time," but claimed she had lied to the police in an attempt to get them to leave her residence. Respondent-mother also acknowledged lying at a Child and Family Team meeting on 4 April 2014, when she claimed her relationship with respondent-father had ended.
After respondent-father testified, the tenor of respondent-mother's testimony changed the following day. She disavowed her previous *40 testimony as untrue and proceeded to describe a longstanding pattern of abusive, controlling behavior by respondent-father toward her. *509 None of these findings support a conclusion that respondent-mother "neglected" her children under N.C. Gen.Stat. § 7B-1111(a)(1). These findings do not address respondent-mother's relationship or care, visitation or support or lack thereof of her children. Rather, they address respondent-mother's interactions and relationship with DSS and respondent-father.
Respondent-mother also challenges the district court's findings regarding her failure to obtain treatment for "social phobia," as recommended by her mental health assessment; to secure stable employment and reliable transportation; and to submit a budgeting plan to DSS. She argues that the district court had no authority under N.C. Gen.Stat. § 7B-904 to order her to make reasonable progress to comply with these requirements. We agree.
"A trial court may not order a parent to undergo any course of conduct not provided for in N.C. Gen. Stat § 7B-904." In re W.V., 204 N.C.App. 290, 297, 693 S.E.2d 383, 388 (2010) (citation and internal quotation marks omitted). In W.V., the trial court ordered the father to obtain and maintain stable employment. There was no evidence that the father's unemployment "led to or contributed to the juvenile's adjudication." Id.
Here, respondent-mother's initial mental health assessment indicated a diagnosis of "social phobia." A treatment option of group therapy was suggested to "assist her in developing [her] sense of self."
Based on the petitions filed by DSS on 1 March 2013, the juveniles were removed from respondents' care due to domestic violence between respondents, respondents' lack of housing, and respondents' failure to provide the juveniles with sufficient food, nutrition, and hygiene. No evidence in the record or finding suggests respondent-mother's "social phobia" led or contributed to these deficiencies. The trial court's finding that respondent-mother failed to make reasonable progress to reunite with her children because she failed to seek services to address her "social phobia" is without statutory authority. The court's reliance on this finding to support lack of reasonable progress is error.
Respondent-mother argues the trial court erred by finding she had not made reasonable progress in obtaining stable employment and reliable transportation. A stable job and reliable transportation may be steps which could "remedy conditions in the home that led to or contributed to the juvenile's adjudication or to the court's decision to remove *41 custody of the juvenile[s]" from respondents' care, as authorized by N.C. Gen.Stat. § 7B-904(d1)(3). However, after the juveniles were removed from her care, respondent-mother obtained employment, which she subsequently lost due to her arrest involving domestic violence with respondent-father and being stranded in Durham due to the weather. Nonetheless, the trial court found respondent-mother regularly and consistently paid child support, attended parenting classes when she was able, and had a nurturing bond with her children.
The trial court's findings concerning respondent-mother's reasonable progress towards correcting the conditions which led to the removal of her children must acknowledge N.C. Gen.Stat. § 7B-1111(a)(2)'s final sentence: "no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty." "A finding that a parent has ability to pay support is essential to termination for nonsupport" pursuant to N.C. Gen.Stat. § 7B-1111(a)(3). In re Ballard, 311 N.C. 708, 716-17, 319 S.E.2d 227, 233 (1984) ; In re T.D.P., 164 N.C.App. 287, 289, 595 S.E.2d 735, 737 (2004) aff'd per curiam, 359 N.C. 405, 610 S.E.2d 199 (2005).
Here, the trial court found that respondent-mother had been employed, but had lost employment due to weather and incarceration. "Where a respondent has been and continues to be incarcerated, our courts have prohibited termination of parental rights solely on that factor." In re D.R.B, 182 N.C.App. 733, 738, 643 S.E.2d 77, 81 (2007).
The court found respondent-mother had obtained housing, but had been unable to pay rent. The court made no finding that respondent-mother "willfully" failed to seek employment or "willfully" failed to pay support *510 of her children based on clear, cogent and convincing evidence.
In the absence of finding willful failure as supported by clear, cogent and convincing evidence, the trial court erred in concluding respondent-mother's lack of stable employment and transportation showed a "lack of reasonable progress" towards "correcting those conditions which led to the removal of the juvenile[s]." N.C. Gen.Stat. § 7B-1111(a)(2).
Respondent-mother also argues the district court exceeded its authority under N.C. Gen.Stat. § 7B-904(d1)(3) by ordering respondent-mother, after a review hearing on 31 July 2013, to submit to DSS "a budgeting plan that can account for where the funds coming into the household goes [sic] and [respondents'] plan for maintaining appropriate funds for the care of their children." Finding of Fact 49 of the termination order shows respondent-mother earned substantial income *42 through her employment at AW from February 2013 until March 2014, yet was unable to pay all her bills or to account for her expenditures, even though she paid child support for her children from her employment.
Respondent-mother initially estimated she was "bringing home about $2,400 a month" when she and respondent-father were evicted from Deer Trails Apartments for non-payment of rent in the Fall of 2013. When asked how she had spent her income, respondent-mother stated "child support, food, trying to pay off some debts. I have to pay on my electric bill ... to have electric[ity] cut on. That's it. I was buying toys for my kids which I might not should have been doing but I was buying toys." Respondent-mother also later testified that respondent-father took all of her money for his own use, which was not disclosed prior to the termination hearing.
Pursuant to N.C. Gen.Stat. § 7B-904(d1)(3), the trial court may order a parent to "[t]ake appropriate steps to remedy conditions in the home that led to or contributed to the juvenile's adjudication or to the court's decision to remove custody of the juvenile from the parent." N.C. Gen.Stat. § 7B-904(d1)(3). The "trial court may not order a parent to undergo any course of conduct not provided for in [ N.C. Gen Stat. § 7B-904 ]." In re Cogdill, 137 N.C.App. 504, 508, 528 S.E.2d 600, 603 (2000) ; see also, In re W.V., 204 N.C.App. at 297, 693 S.E.2d at 388-89.
No evidence shows the respondent-mother's failure to prepare a budget caused or perpetuated the neglect of the children or the conditions that led to the children being removed from her custody. As this is not an enumerated course of conduct, the trial court exceeded its authority under N.C. Gen. § 7B-904 in finding her failure to prepare a budget plan showed lack of reasonable progress to reunify with her children.
The trial court failed to make findings of fact to establish either willfulness or lack of reasonable progress to correct the conditions which led to the removal of the juveniles by clear, cogent and convincing evidence and to support the termination for neglect under N.C. Gen.Stat. §§ 7B-904 or 7B-1111(a)(1). In re J.S.L., 177 N.C.App. at 160-164, 628 S.E.2d at 392-394. DSS "must show that the parent has neglected the child in the past and that the parent is likely to neglect the child in the future." In re C.W., 182 N.C.App. at 220, 641 S.E.2d at 729 ; In re Ballard, 311 N.C. at 714-15, 319 S.E.2d at 231-32. The trial court's order does not include these findings to support its conclusions and is reversed as to respondent-mother.
*43 III. Respondent-Father's Appeal
Respondent-father does not challenge the grounds for termination of his parental rights found by the district court under N.C. Gen.Stat. § 7B-1111(a)(1)-(3), but argues that the court improperly chose termination as the disposition serving the best interests of the juveniles. In his brief, respondent-father cites the bond he shares with his children and proposes guardianship as providing the juveniles with "both a permanent plan and a continuing relationship with their parents." He further notes that "the prospective adoptive parent in this case was the children's unmarried paternal [sic] grandmother."
The district court's decision to terminate respondent-father's parental rights is *511 supported by the findings of fact. The court made findings of fact on each of the dispositional factors set forth in N.C. Gen.Stat. § 7B-1111(a)(1)-(5). Respondent-father asserts the court was obliged to make a specific finding regarding the juveniles' "need for ongoing contact with their parents" under the catchall provision of N.C. Gen.Stat. § 7B-1111(a)(6). "[T]he trial court is not required to make findings of fact on all the evidence presented, nor state every option it considered" in arriving at its disposition under N.C. Gen.Stat. § 7B-1110. In re J.A.A., 175 N.C.App. 66, 75, 623 S.E.2d 45, 51 (2005).
Insofar as respondent-father suggests that preserving his parental rights would "keep [him] on the hook for child support," the record shows he paid nothing toward the support of the juveniles during the course of these proceedings and evidence shows he took respondent-mother's wages for himself. Respondent-father's objections and arguments are overruled.
IV. Conclusion
The portions of the trial court's order to terminate respondent-mother's parental rights are reversed and the portions of the order to terminate respondent-father's parental rights are affirmed.
REVERSED IN PART AS TO RESPONDENT-MOTHER AND AFFIRMED AS TO RESPONDENT-FATHER.
Judges ELMORE and INMAN concur.