McGEE, Chief Judge.
Respondent-Mother ("Respondent") appeals from order terminating her parental rights to the minor children H.N.H. and H.L.H. (together, "the children"). We affirm in part and remand in part.
I. Background
The Mecklenburg County Department of Social Services ("DSS") obtained non-secure custody of two-year-old H.N.H. and one-year-old H.L.H. on 21 January 2015. DSS filed a petition alleging the children were abused, neglected, and dependent juveniles. The petition alleged that DSS received a Child Protective Services ("CPS") referral on 20 January 2015 after H.N.H. presented at the Presbyterian Hospital Emergency Department with a "spiral fracture" of her left humerus. She also had bruises covering her back "from her neck to her buttocks." A DSS social worker responded to the hospital and observed a faint bruise on the left side of H.N.H.'s face, bruising on her back, and observed her left arm in a cast. Respondent admitted to "yanking" H.N.H. by the arm on 19 January 2015, but H.N.H.'s treating physician advised that a spiral fracture was not consistent with Respondent's explanation. Respondent's husband, who was not H.N.H.'s father, admitted to causing the bruising on H.N.H.'s back by spanking her with a belt two weeks earlier, but he was unaware of how she received the bruise on her face.
The petition further alleged Respondent had a history with CPS dating back to 2012. The history involved allegations of substance abuse, mental health issues, improper care, and physical abuse.
Following hearings on 27 May 2015, 31 August 2015, and 2 September 2015, the trial court entered an order on 13 November 2015 adjudicating H.N.H. to be an abused, neglected, and dependent juvenile, and H.L.H. to be a neglected and dependent juvenile.[1] In a separate dispositional order entered 14 December 2015, the trial court continued custody of the children with DSS and established a primary permanent plan of reunification, with a secondary plan of guardianship or custody with a relative or other suitable person. The trial court also ordered Respondent to comply with an Out-of-Home Family Services Agreement with DSS, which included the following requirements: complete an assessment by Families in Recovery Together Stay Together ("FIRST") and comply with all recommendations; complete domestic violence classes; demonstrate satisfactory parenting skills; manage mental health issues; complete a substance abuse assessment and comply with all recommendations; maintain income sufficient for the children's needs; maintain appropriate and stable housing; and maintain weekly contact with DSS.
In the following months, the trial court conducted several permanency planning hearings. Pursuant to a hearing held 4 May 2016, the trial court entered an order on 25 May 2016 changing the primary permanent plan to adoption, with a secondary plan of reunification. The trial court found that, among other things, Respondent was not making adequate progress on her case plan because she did not have full-time employment and her substance abuse issues remained unresolved.
After a hearing on 1 November 2016, the trial court entered an order on 4 November 2016 ceasing reunification efforts. The trial court found Respondent was acting inconsistently with the health and safety of the children and that she was not making adequate progress on her case plan because she had been ordered to complete an inpatient substance abuse treatment program at the jail following positive drug tests. The trial court maintained the primary permanent plan as adoption, changed the secondary plan to guardianship or custody with a relative or other suitable person, and ordered DSS to file a petition to terminate Respondent's parental rights within sixty days.
DSS filed a petition on 28 December 2016 to terminate Respondent's parental rights on the grounds of (1) neglect, (2) willfully leaving the children in foster care for more than twelve months without showing reasonable progress in correcting the conditions that led to their removal, (3) willfully failing to pay a reasonable portion of the cost of the children's care, and (4) dependency. See N.C. Gen. Stat. § 7B-1111(a)(1)-(3), (6) (2017). The termination proceedings were held on 24 May 2017, 5 June 2017, and 28 June 2017. The trial court entered an order on 24 January 2018 adjudicating the existence of all of the grounds alleged in DSS's petition. The trial court concluded it was in the best interests of H.N.H. and H.L.H. for Respondent's parental rights to be terminated and entered an order terminating Respondent's parental rights as to the children.[2] Respondent appeals.
II. Analysis
Respondent argues on appeal that the trial court erred by determining that termination of her parental rights was in the children's best interests.[3] Specifically, she argues that the trial court was not compelled to terminate Respondent's parental rights, that particular findings of fact in the trial court's termination order are not supported by competent evidence and sufficient findings of fact, that the trial court failed to make certain findings required by N.C. Gen. Stat. § 7B-1110(a), and that H.N.H.'s and H.L.H.'s best interests "were not reasonably or rationally" served by termination of her parental rights.
"After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2017). In deciding whether terminating parental rights is in a juvenile's best interest,
the court shall consider the following criteria and make written findings regarding the following that are relevant:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C.G.S. § 7B-1110(a)(1)-(6). This Court reviews the trial court's best interest determination for abuse of discretion. In re D.L.W. , 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016). "The trial court is 'subject to reversal for abuse of discretion only upon a showing ... that the challenged actions are manifestly unsupported by reason.' " In re J.L.H. , 224 N.C. App. 52, 57, 741 S.E.2d 333, 337 (2012) (alteration in original) (quoting Clark v. Clark, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980) ). While Respondent acknowledges that this Court reviews the trial court's best interest determination for an abuse of discretion, she argues that the trial court's best interest determination is a conclusion of law that should be reviewed de novo on appeal. This Court has consistently applied the abuse of discretion standard to the trial court's best interest determination. See, e.g. , In re A.B. , 245 N.C. App. 35, 41, 781 S.E.2d 685, 689, disc review denied , 369 N.C. 182, 793 S.E.2d 695 (2016).
Rearranged for clarity, the trial court made the following pertinent findings of fact related to the children:
69. That [H.N.H.] is five (5) years old. [H.L.H.] is four (4) years old.
70. That [Respondent-Mother] has a bond with the children. The children are happy to see [Respondent-Mother] during visits. They did not have to be prompted to give [Respondent-Mother] hugs. They went to the park and watched cartoons on her cell phone. [Respondent-Mother] sang the "clean up song" with them at the end of visits.
71. That on the other hand, when [the children's guardian ad litem ] visited the children, they never spoke about their mother or their wanting to see her.
72. That [Respondent-Mother] wants to reunify with her children although she once wanted to relinquish her parental rights to the [children] if her mother could obtain custody of them.
73. That the children are placed with a two parent foster family. This family is not a prospective adoptive home. The foster mother used to own a daycare and has a room in her home set up like a classroom. Ms. Simmons-Smith [the children's DSS social worker] would like for the maternal grandmother to be considered as a placement option but she has not attempted to contact [DSS] since the [children] were removed from her care. It is unknown if the maternal grandmother has obtained new housing and employment. The places she identified as possible residences were both homes operated by the Charlotte Housing Authority (CHA). CHA has strict rules about who can live in their homes and those individuals would have to be approved first.
74. That the maternal grandmother provided Ms. Simmons-Smith with names of two family members to be possible placement options for the children. Ms. Simmons-Smith contacted them and they all said they could not care for the children.
75. That Family Finders attempted to find other family members but did not come up with any names.
76. That [the children's guardian ad litem ] believes the children are adoptable due to their age, their good behavior, and the way they care for one another.
77. That there are no other barriers to adoption aside from the parental rights of the parents remaining intact.
78. That the children are receiving therapy at Kids Central to help with the transitions between placement providers.
....
82. That the [children] are in need of a safe, stable, permanent, and appropriate environment. Finding a safe, stable, and permanent environment can only be accomplished through adoption. Termination of parental rights would assist in the adoption process. The goal in this case is adoption.
....
79. That [Respondent-Mother] has been on an emotional rollercoaster during the life of this case. She has left voicemail messages for Ms. Simmons-Smith cursing her out. She has hung up the phone on Ms. Simmons-Smith.
....
[9.]c.[4] Although [Respondent-Mother] completed Domestic violence training, parenting classes, and is no longer in a relationship with [her husband], [Respondent-Mother] continues not to address her illegal substance use. [Respondent-Mother] completed drug treatment and yet returned to using drugs as a way to cope with stressful times. She tested positive for marijuana and cocaine on multiple occasions while in the FIRST program and after being discharged from the program, has not returned to treatment, or at a minimum, provided the court with any proof that she is no longer using.
[9.]d. It is unknown whether [Respondent-Mother] will return to selling drugs for financial support which she readily admitted doing when speaking with Ms. Simmons-Smith and the court. Furthermore, [Respondent-Mother] had to rely on [her husband's] income to help provide housing and food for herself, even though the children were not living with her and were in [DSS] custody.
[9.]e. Despite completing domestic violence treatment, [Respondent-Mother] still has difficulty expressing her frustrations and anger. This kind of negative response was exhibited to Ms. Simmons-Smith, and to the maternal grandmother causing the initial removal of the children from the maternal grandmother's home in 2015. [Respondent-Mother] was ordered to participate in mental health therapy to find better ways to manage her stress and emotional responses but [Respondent-Mother] never completed the treatment, even though [she] was clinically recommended to do so. This behavior jeopardized [Respondent-Mother's] plan for visitation, and ultimately caused the maternal grandmother to not want to provide care for the children.
[9.]f. Most importantly, although [Respondent-Mother] has a bond with the [children], she was inconsistent in her visitation with the [children]. Although the [children] were living with the maternal grandmother, [Respondent-Mother] missed a lot of visitation[s] with the [children]. Her inconsistency affected the [children], especially [H.N.H.], who through play therapy exhibited signs of this in her role playing with toys. [Respondent-Mother] claimed the reason for her missed visits was work related mostly. [Respondent-Mother] never sought to modify her work schedule or ask for a different visitation schedule. Consistent visits would have helped [Respondent-Mother] not only increase her bond with her [children], but show the court that she was capable of working with her [children] in the right way, including discipline.
Dispositional findings are binding on appeal if they are supported by competent evidence in the record. See In re C.M ., 183 N.C. App. 207, 212, 644 S.E.2d 588, 593 (2007). Additionally, findings not specifically contested by a respondent "are conclusive on appeal and binding on this Court." In re S.C.R. , 198 N.C. App. 525, 532, 679 S.E.2d 905, 909 (2009).
Respondent challenges the portion of finding of fact number 82 that states "[f]inding a safe, stable, and permanent environment can only be accomplished through adoption" as unsupported by the evidence. Respondent notes that, while the children's primary permanent plan was adoption, the secondary plan was guardianship. Respondent asserts that the maternal grandmother was the "apparent appropriate guardian" for H.N.H. and H.L.H., and DSS's intent to explore permanent placement with the maternal grandmother undermines the trial court's finding. However, the record evidence supports the trial court's finding in that the DSS social worker testified the maternal grandmother had not contacted DSS since the children had been removed from her care approximately one month before the termination hearing. Therefore, at the time of the hearing it was not known whether the maternal grandmother had addressed her financial difficulties and would be able to care for the children. Respondent also testified she did not know the whereabouts of the maternal grandmother at the time of the termination hearing.
Respondent also challenges finding of fact number 76, contending that the trial court failed to make a "specific finding of fact" on H.N.H.'s and H.L.H.'s likelihood of adoption pursuant to N.C.G.S. § 7B-1110(a)(2), and to the extent the court found the children were adoptable, such a finding was not supported by the evidence. We agree that the trial court simply recounted the guardian ad litem 's ("GAL") report and did not find the children were adoptable. See In re O.W. , 164 N.C. App. 699, 703, 596 S.E.2d 851, 854 (2004) ("[I]t is not the role of the trial court as fact finder to simply restate the testimony given."). Therefore, we must determine whether the trial court was required to make a written finding on the children's likelihood of adoption under N.C.G.S. § 7B-1110(a)(2).
"The language of [ N.C.G.S. § 7B-1110(a) ] requires the trial court to 'consider' all six of the listed factors," but the statute does not "require[ ] the trial court to make written findings with respect to all six factors; rather, as the plain language of the statute indicates, the court must enter written findings in its order concerning only those factors 'that are relevant.' " In re D.H. , 232 N.C. App. 217, 220-21, 753 S.E.2d 732, 735 (2014) (citing In re J.L.H. , 224 N.C. App. 52, 59, 741 S.E.2d 333, 338 (2012) ). "[A] factor is 'relevant' if 'there is conflicting evidence concerning' the factor, such that it is 'placed in issue by virtue of the evidence presented before the trial court[.]' " In re H.D. , 239 N.C. App. 318, 327, 768 S.E.2d 860, 866 (2015) (second alteration in original) (quoting D.H. , 232 N.C. App. at 222 n.3, 753 S.E.2d at 735 n.3.).
In the case before us, the DSS social worker testified at the hearing that she had no concerns about the agency's ability to find adoptive placements for H.N.H. and H.L.H. In addition, the GAL's report to the trial court, which was admitted through the testimony of the GAL at the hearing, stated the children were likely to be adopted. The GAL recognized the children had displayed behavioral issues but felt they were likely to overcome those issues with continued therapeutic support. In response, Respondent directs our attention to evidence in the record tending to show that H.N.H. and H.L.H. exhibited significant emotional and behavioral issues in non-relative foster care placements. She argues the children had been placed eight times during the thirty months they were in DSS custody, including two placement changes precipitated specifically because of their behavioral and emotional issues; thus, they did not have "a good likelihood of being adopted[.]" This conflicting evidence made the children's likelihood of adoption a relevant issue, thereby necessitating a written finding by the trial court on that factor. See, e.g., In re E.B.J. , --- N.C. App. ----, 822 S.E.2d 168 (2018) (unpublished); In re S.M.M. , --- N.C. App. ----, 822 S.E.2d 329 (2019) (unpublished). Because the record contains evidence from which the trial court could make findings regarding this factor, we remand the matter to the trial court for entry of appropriate findings pursuant to N.C.G.S. § 7B-1110(a)(2). See In re J.L.H. , 224 N.C. App. 52, 59-60, 741 S.E.2d 333, 338 (2012).
Respondent also argues the trial court erred by not making findings as to "[a]ny relevant consideration" pursuant to N.C.G.S. § 7B-1110(a)(6). Specifically, she contends the trial court failed to consider and enter findings of fact regarding the children's "need for consistency" provided by their maternal grandmother, Respondent, and other family members; the children's "behavioral and emotional problems caused by their persistent instability"; and "their lack of success in previous foster placements." " 'The trial court is not required to make findings of fact on all the evidence presented, nor state every option it considered' in arriving at its disposition under N.C. Gen. Stat. § 7B-1110." In re A.L.L. , --- N.C. App. ----, ----, 802 S.E.2d 598, 609 (2017) (quoting In re D.L.W. , 241 N.C. App. 32, 43, 773 S.E.2d 504, 511 (2015), rev'd in part on separate grounds , 368 N.C. 835, 788 S.E.2d 162 (2016) ). However, several of the trial court's unchallenged findings, including findings of fact numbers 55-56 and 70-75, reflect that the trial court considered the consistency, or lack thereof, provided by Respondent and the maternal grandmother. Additionally, the termination order shows the trial court considered the effects of placement changes on H.N.H. and H.L.H., stating that "the children are receiving therapy at Kids Central to help with the transitions between placement providers." To the extent Respondent contends that these considerations are relevant to determining the children's likelihood of adoption, those issue will be addressed by the trial court on remand.
III. Conclusion
Accordingly, we conclude the portion of finding of fact number 82 stating that adoption is necessary to establish a safe, stable, and permanent environment is supported by competent evidence. However, we remand this matter for entry of appropriate findings of fact regarding H.N.H.'s and H.L.H.'s likelihood of adoption pursuant to N.C.G.S. § 7B-1110(a)(2). Respondent also contends the children's best interests were not reasonably or rationally served by terminating her parental rights. Because we remand this matter to the trial court to make requisite findings under N.C.G.S. § 7B-1110(a)(2), we do not address Respondent's remaining argument on appeal.
AFFIRMED IN PART; REMANDED IN PART.
Report per Rule 30(e).
Judges HUNTER, JR. concurs.
Judge MURPHY concurs in result only.

The trial court's order also concerned a third child, S.M., who was born to Respondent on 27 July 2015 while H.N.H. and H.L.H. were in DSS custody. However, S.M. is not a subject of this appeal; therefore, only facts pertinent to H.N.H. and H.L.H. are discussed herein.

The trial court's order also terminated the parental rights of H.N.H.'s putative father, but he is not a party before this Court.

Respondent concedes that grounds existed to terminate her parental rights under N.C. Gen. Stat. § 7B-1111(a)(3), and that a finding of one statutory ground under N.C. Gen. Stat § 7B-1111 is sufficient to support termination. See In re Humphrey , 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003). Nevertheless, Respondent challenges adjudicatory conclusions of law numbers 5 and 6 "as [they] relate to her purported lack of reasonable progress," when arguing that the trial court erred by determining that termination of her parental rights was in the children's best interests. Because Respondent concedes that one ground existed to terminate her parental rights, we need not address arguments regarding the trial court's additional grounds for termination.

Although the trial court designated all of the subparts of Conclusion of Law No. 9 as conclusions of law, the subparts are more accurately characterized as findings of fact, and we review them accordingly. See In re B.S.O., 234 N.C. App. 706, 711, 760 S.E.2d 59, 64 (2014) ("[I]t is immaterial that the court labeled its finding of willfulness by respondent-father a conclusion of law.") (citing State v. Hopper, 205 N.C. App. 175, 179, 695 S.E.2d 801, 805 (2010) (reviewing a mislabeled "conclusion of law" as a finding of fact)).